NEBRASKA LOAN & TRUST COMPANY, APPELLEE, v. FRANCIS G. HAMER ET AL., IMPLEADED WITH NEBRASKA LAND, STOCK GROWING & INVESTMENT COMPANY, APPELLANT.

FILED APRIL 17, 1894.   No. 6551.

1. **Appeal From Order Confirming Sale:** REVIEW OF ORIGINAL DECREE: TRANSCRIPT. In an appeal from an order confirming a sale in a foreclosure case, the transcript in this court containing none of the record prior to the decree, assignments of error relating to the propriety of the decree, will be disregarded.

2. **Judicial Sales:** ALIAS ORDERS: APPRAISEMENT. Where land was sold under an order of sale, the sale vacated for irregularities, and an *alias* order of sale issued on which there was a new appraisement higher than the first, *held*, that the making of the second appraisement was not a valid objection on the part of the mortgagor to the confirmation of the sale.

3. ———: DEFECTIVE NOTICE. A sale will not be vacated for inaccuracies of recitals in the published notice which were in no way prejudicial to the parties or the purchaser.

4. **Qualifications of Appraisers.** The only land held by one of the appraisers was originally conveyed to him as security for a debt by deed absolute in form. Subsequently, and before the appraisement, he paid further money to the grantor under the agreement that the deed should thenceforth be treated as absolute. *Held,* That this constituted a conveyance of the land and that he was a freeholder.

5. **Whether the qualifications of an appraiser** may be impeached by parol evidence to show that a deed to him absolute on its face, was in fact a mortgage, *quære.*

6. **Judicial Sales:** VALIDITY OF APPRAISEMENT. A sale will not be vacated because one of the appraisers misconceived the manner of estimating the value of the property where it does not appear that such misconception resulted in an unfair appraisement.

7. ———: POWER OF COURTS TO SET ASIDE. The courts cannot interpose to prevent creditors from enforcing their claims or to set aside judicial sales to satisfy debts because of depression in business or financial stringency.

8. **An order of confirmation** may be made at an adjourned term of court, and at any reasonable time after the return of the order of sale, even though such return be made before the expiration of the full period permitted for that purpose.

9. **Applications for continuances** or postponements of hearings are addressed to the discretion of the court and will not be reviewed except for abuse of discretion.

10. **A judicial sale** must be made in accordance with the decree of the court, and its terms cannot be changed by agreement of parties or counsel not incorporated into the record.

11. **The officer conducting a sale** is not required to entertain any bids coupled with conditions not in conformity with the terms of the decree.

12. **Acceptance of Bid.** Until a bid is accepted it is a mere proposal and may be withdrawn by the bidder. After acceptance it becomes a binding contract and cannot be withdrawn or changed except under such circumstances as would justify the rescission or reformation of other contracts.

APPEAL from the district court of Phelps county. Heard below before BEALL, J.

*F. G. Hamer*, for appellant:

A judicial sale may be set aside for fraud or unfairness of any kind. (*McKeighan v. Hopkins*, 19 Neb., 34; *Paulett v. Peabody*, 3 Neb., 196; *Taylor v. Courtnay*, 15 Neb., 190; *Aldrich v. Lewis*, 28 Neb., 502.)

The case was taken up immediately after the filing of affidavits by the plaintiff, and no time was given to prepare and file affidavits. The court erred in overruling the application for a continuance. (*Hair v. State*, 14 Neb., 503; *Gandy v. State*, 27 Neb., 719; *City of Lincoln v. Staley*, 32 Neb., 63; *Johnson v. Mills*, 31 Neb., 524; *Miller v. State*, 29 Neb., 437; *Elliott v. State*, 34 Neb., 48.)

*John A. Casto, contra.*

IRVINE, C.

This was an action by the Nebraska Loan & Trust Company against the Nebraska Land, Stock Growing & Investment Company to foreclose a mortgage. The appeal is from the order confirming a sale made under a decree rendered in the action. The transcript filed here begins with the decree, from which it appears that Francis G. Hamer and Rebecca A. Hamer, his wife, were originally parties defendant, but it appearing that they had conveyed the land to the investment company the case was dismissed as to them. The premises mortgaged are described as "the west one-half of section three (3), town five (5) north, range eighteen (18) west of the sixth principal meridian." The decree finds due the trust company $1,568.70, with interest at ten per cent from the date of the decree, December 30, 1891, and that that amount is a first lien upon the land. It finds that the trust company has a mortgage to secure notes not due at the time of the decree amount-

ing to $9,200, with interest from June 1, 1891, and that the amount of $1,568.70 found to be due was delinquent interest on those notes. The decree next finds due the defendant Isaac E. Pierce, on a note and mortgage constituting a second lien, $3,797, with interest at ten per cent per annum from the date of the decree; and to the defendant James N. Clarke, on a note and mortgage constituting a third lien, $4,872, with interest at a like rate from the same time. There were two other defendants, the Holdrege Manufacturing Company and C. H. Bogue & Co., whose claims were evidently found to be junior to those named, but reserved for further hearing until the coming in of the report of sale. The decree provides a period of fifteen months for redemption, and in default of payment within that time orders a sale of the property, or so much thereof as may be necessary, to pay first, the costs; second, the sum found due the trust company; third, the sum found due Pierce; fourth, the sum found due Clarke; fifth, the surplus to be paid into court to abide its further order; and the decree further directs the sale to be made subject to the liens of the trust company for its $9,200 mortgage, with eight per cent interest from June 1, 1891. With the propriety of this decree we have nothing to do. The record prior to the decree is not before us, and we must, therefore, assume the decree to be in all respects correct. This statement is necessary because some of the objections made to the confirmation of the sale really go to the correctness of the decree and clearly not valid, if the decree is correct.

An order of sale was issued March 31, 1893, upon which a sale was made, which was on June 24 set aside, and on June 29 another order of sale was issued, upon which a new appraisement was had and a sale made August 9. The order of sale was returned August 10, the sale confirmed August 24, the court overruling objections filed by the investment company to the confirmation of the sale and its

motion to set the same aside. In view of the fact that the investment company assigns sixty-five reasons why the sale should be set aside we will probably be excused from discussing each assignment at length. As already stated, some of the objections really go to the validity of the decree and not to the regularity of the sale. Others are based upon allegations of fact which an inspection of the record shows to be without any support whatever. As an instance of the former class we may cite the assignment that the holders of mechanics' liens should have been brought into court and their liens ascertained before the premises were sold. The certificate of liens shows that the mechanics' liens referred to must be the liens of the Holdrege Manufacturing Company and C. H. Bogue & Co., parties who were evidently in court and their priorities at least adjusted in the decree. If the decree was erroneous for not determining these liens in full before the sale was ordered, there should have been an appeal embracing all the proceedings. As an instance of the latter class we may cite the objection that the appraisement was not made until after the notice of sale had been published. The record discloses that the appraisement was made July 1, and the first publication of the notice of sale was July 5. These are but instances of a number of objections and are cited only to show their nature and the futility of considering all the objections in the opinion.

There are several objections based upon the fact that the sale was not made under the appraisement had under the first order of sale. This objection is based upon sections 495 and 509 of the Code of Civil Procedure, which provide for a new appraisement where lands shall have been twice advertised and offered for sale and remain unsold for want of bidders. This provision was for the benefit of the party to satisfy whose lien the sale is made, in order to obtain a lower appraisement. Here the land did not remain unsold for want of bidders, but was sold and the sale

vacated for irregularities. Within the time limited by section 510 of the Code for the return of the writ no new sale could have been had under the old order, and the issuing of the new order of sale and the making of a new appraisement was not necessarily improper. Under the first appraisement the gross value of the lands was placed at $17,600 and the value of the interest of the investment company at $6,436.53, while under the second appraisement the gross value was placed at $18,950 and the value of the interest of the investment company at $9,350.68. The reappraisement operated manifestly to the advantage of the investment company and it could not in any event complain.

It is complained that the published notice of said sale was deficient. One objection to this notice is that it states the amounts incorrectly. A comparison of the notice with the decree and order of sale shows that this objection is unfounded. The other objection is that it described the liens to satisfy which the sale was to be made as judgments against Francis G. Hamer, Rebecca A. Hamer, and the investment company, whereas the Hamers had been dismissed out of the case, and the judgment was against the investment company alone. The notice certainly was inaccurate in this respect, but we cannot see how the investment company could possibly have been prejudiced thereby. The same remark will apply to the further statement in the notice of sale that there had been a levy upon the land ordered sold.

Another objection urged is that Mr. Scranton, one of the appraisers, was not in fact a freeholder as the statute requires. The evidence upon this point shows that land in Phelps county appears of record as belonging to Scranton; that the deed was made to Scranton to secure a loan made by him to the grantor, but that subsequently, and before the appraisement, Scranton had advanced further moneys to the grantor, with the agreement that the conveyance

should be treated as absolute. Under this state of affairs we do not feel called upon to consider the question as to whether, for the purpose of determining the qualifications of an appraiser, strangers may attack a deed to him, abso- .lute on its face, by parol evidence to show that it is a mort- gage. . While this conveyance was a mortgage when made, the advancement of other moneys later and the agree- ment then made that it should no longer be treated as a mortgage but as a conveyance absolute, would operate by estoppel, if the transaction was fair, which we must pre- sume, to constitute it a sale. Proof of these facts would undoubtedly have defeated the grantor in an action to re- deem, and would have defeated the grantee in an action to recover the moneys advanced as a debt. (*Peugh v. Davis*, 96 U. S., 337; *Niggeler v. Maurin*, 34 Minn., 118.)

Another objection is based upon the affidavit of Scran- ton, that he appraised the land at what he supposed it would bring at forced sale, and that he believed the land in ordinary times would be worth $100 per acre. Ap- praisements should be made according to the judgment of the appraisers of the fair market value of the property at the time of the appraisement, and where it appears that they proceeded upon a different basis, to the prejudice of the party objecting, it is probable that the appraisement should be vacated upon proper proceedings for that pur- pose. Another objection was made that the appraisement was too low, and there was a number of affidavits fixing a valuation of the property per acre considerably greater than the valuation placed upon it by the appraisers; but, upon the other hand, a number of witnesses place the value at $40 and $50 per acre, while the appraisement is nearly $60 per acre. The trial judge must have considered this evidence in connection with the objection in relation to the method pursued by Scranton, and he must have found on this conflicting evidence in favor of the lower valuation. If the value of the land was even approximately as low as

that fixed by plaintiff's witnesses, the appraisement was fair and the investment company was in nowise prejudiced by the erroneous notions entertained by Scranton. This conclusion is emphasized when we find that the appraised value of the investment company's interest was $9,350.68, while the land sold for more than $12,000, the bids having gone far above two-thirds of the appraised value. It is not possible that Scranton's error in judgment resulted in a sacrifice of the property. His testimony is that in "ordinary times" the land would be worth $100 per acre, but the investment company has in the record a vast volume of testimony to show that the appraisement was had and the sale made in a period of extreme business depression and financial stringency, and Mr. Scranton does not say that he believed the land to be worth $100 per acre at that time. The suggestions just made render it appropriate to here say all that is necessary upon the assignments relating to the fact that the sale was had during a period of panic and business depression. It would hardly require evidence to satisfy the court that August of 1893 was not a propitious time for the forced sale of land, but we cannot see how the courts can interpose upon such grounds for the protection of unfortunate debtors. Laws suspending actions for the collection of debts are not known to our jurisprudence, and the legislature could not constitutionally enact them, much less can the courts interpose to provide such a suspension. The decree had been rendered, the period of redemption, unusually long, had expired, the mortgagees had a legal right to proceed, and the courts could not stay their hand or refuse them process merely because of circumstances of misfortune or hardship. Appeals for relief upon such grounds must be addressed to the conscience and mercy of creditors, and are wholly beyond the jurisdiction of judicial tribunals.

It is said that the confirmation was irregular because entered at an adjourned term of court and within sixty days

of the issuance of the order of sale.    We know of no provision of law requiring an order of confirmation to be made at a regular rather than at an adjourned term; nor are we aware of any provision which forbids a confirmation at any reasonab.e time after the return.    Section 510 of the Code required a writ to be returned "within" sixty days from its date.    The word "within" in itself indicates that the return need not be deferred until the sixtieth day, and indeed diligence on the part of the officer requires the return to be made promptly.

Complaint is made that the court overruled an application to continue the hearing of the motion to confirm until the following term or a future date, for the reason that counsel had not had sufficient opportunity to examine the return and to procure affidavits.    Applications for continuances and postponements of hearings are addressed to the discretion of the court, and will not be reviewed except for abuse of discretion.    The investment company filed sixty-five objections to the confirmation.    It filed twenty-six affidavits in support of these objections and three affidavits in rebuttal of those of the mortgagees.    Many of these affidavits are detailed and elaborate.    It would seem, therefore, that a fair opportunity had been allowed it to present proof.    There appear as exhibits attached to one of the affidavits a vast number of newspaper clippings of the date of August last containing information relating to the finances of the Union, the attitude assumed by members of congress upon questions relating to the currency, the failures of banks, the closing up of manufactories, and the decline in value of stocks.    It also includes the whole of a speech made by a Nebraska representative upon a bill relating to the currency.    If further time had been afforded, the trial judge might have entertained a well-grounded fear that he would have thrust upon his attention the remainder of the Congressional Record and a further vast volume of distressing current literature.

23

The objections chiefly urged, and those reaching most closely the merits of the case, relate to the refusal of the sheriff to accept certain bids made on behalf of Rebecca A. Hamer, and to his selling the property to the plaintiff in the case at less than the amount of Mrs. Hamer's bids. The affidavits as to what occurred upon the sale are exceedingly voluminous and narrate in detail the whole course of the bidding. The land was first offered in lots of forty acres each, according to governmental subdivisions. In this way six lots were sold. The two remaining forty-acre tracts adjoining one another, having then been offered separately without bids, were sold together. The plaintiff was the purchaser of all. When the proof upon the subject is analyzed very little conflicting evidence is found. On the southeast quarter of the southwest quarter there can be no doubt that the plaintiff was the highest bidder. Mrs. Hamer made a bid upon this tract, together with others, but the plaintiff was the only separate bidder. It was quite proper to sell the tracts separately where separate bids were obtainable. The investment company complains that this forty was cut off from the highway and only became accessible through ownership of the adjoining tract, but that is a fact affecting the value of the land and not the validity of the sale.

Upon each of four other tracts there was a more or less prolonged series of bids made alternately by Mrs. Hamer and the plaintiff. In each case the land was declared sold to the plaintiff, in spite of a bid by Mrs. Hamer, in three cases $5 higher than plaintiff's bid and in one case $45 higher; but Mrs. Hamer's bid was in three instances declared by her agent to be "subject to all liens except $1,568.70," and in the fourth instance "subject to all prior liens except $1,568.70." The proof on the part of the plaintiff tends to show that nothing was said as to what this exception referred to, while the proof on the part of the investment company tends to show that the exception was stated to relate

to the first lien being foreclosed. This discrepancy is immaterial, because without any more definite statement the identity of amount would afford almost a conclusive presumption to that effect. As to the three bids which were made "subject to all liens except $1,568.70," there can be no doubt that this was a condition altering the terms of the sale and the terms of the decree. As to the bid which was "subject to all prior liens except $1,568.70," it is very difficult to tell from the bid itself what was the intention of the bidder or how it was sought by that condition to effect her purchase; but when we examine all the proof and examine the whole course of the bidding the intention becomes evident. It is claimed on the behalf of the investment company that the decree in the case was rendered in pursuance of a stipulation which was entered into in reliance upon an assurance by the trust company's attorney that the trust company would be satisfied with the collection of the $1,568.70. This attorney also appeared of record for the lienors Clarke and Pierce, and it is the investment company's contention that upon this assurance it was entitled to have the land sold simply to satisfy the $1,568.70, leaving all other liens in force. Again, we must remind counsel that we cannot review the decree in the case. The decree is clear and positive in awarding a foreclosure of the Clarke and Pierce liens and a sale to satisfy them. The sale had to be according to the decree. If there was a valid arrangement between the parties prior to the decree, it should have been embodied in the decree. If there was a subsequent arrangement capable of enforcement, the decree should have been modified to conform to it. From the affidavit of Mrs. Hamer's agent it distinctly appears that he attached these conditions to her bids for the purpose of enforcing the understanding which he claims he had upon the subject. This being true, the bids made by Mrs. Hamer were clearly coupled with conditions. The prior bidding had been complicated in many cases with double bids, one unconditional

and the other subject to the conditions named. The following language of the supreme court of Indiana in *Swope v. Ardery*, 5 Ind., 213, is quite applicable to the case: "The course of Robinson in bidding now with and then without the condition was well calculated to confuse the officer and perhaps justify him in disregarding it altogether. To bid with the condition was wholly inadmissible. It is well settled that the sheriff can receive only unconditional cash bids." In *Moore v. Owsley*, 37 Tex., 603, it was said in regard to an administrator's sale: "We understand the law governing sales at public auction to be, where the sale is advertised to be on specific and restricted terms, any bid made at that sale not in strict conformity with the terms advertised is no bid at all, and the crier is not bound to notice the same." It was further held there that such a bid cannot be treated as an absolute bid or enforced as such. Therefore Mrs. Hamer's bid, subject to the conditions, could not be enforced against her under the terms of the sale, and to disregard the bid was the only proper course.

The sale of the southwest quarter of the southwest quarter stands upon a somewhat different footing. The first bid was by Mrs. Hamer for $500. This was followed by one for the plaintiff for $1,505. It then went upon straight bids made alternately by Mrs. Hamer and the trust company until it reached $1,565, when Mrs. Hamer began to make double bids of different amounts, one absolute, the other coupled with conditions, until finally there was a straight bid by the plaintiff for $1,825, and a single bid by Mrs. Hamer for $1,830, conditioned as in the other cases. Thereupon the plaintiff withdrew all its bids down to $1,505, and Mrs. Hamer withdrew all her bids to $1,510, and made that bid subject to the usual conditions. Whereupon the land was sold to the plaintiff for $1,505. This left this tract in the same condition as the others, provided the withdrawal of higher bids was proper. In *Payne v. Cave*, 3 T. R. [Eng.], 148, it was held that a bidder might

retract his bid at any time before the hammer was down, the sale being declared to be analogous to ordinary cases of contract where the assent of both parties is necessary.   The same doctrine was announced in *Fisher v. Seltzer*, 23, Pa. St., 308, in regard to a sheriff's sale, and in *Blossom v. Milwaukee & C. R. Co.*, 3 Wall. [U. S.], 196, as applying to a sale under a decree of foreclosure.   The reason of these cases is unanswerable.   The bid only amounts to a proposition to buy, and until the crier of the sale, by the fall of the hammer or other recognized act of acceptance, signifies assent to the proposition there is no contract, and the proposal may be withdrawn.   We think, therefore, that this tract was properly sold to the plaintiff at $1,505.

An entirely different state of affairs exists in regard to the two tracts sold together.   Mrs. Hamer made one small bid on this tract, which was followed by one somewhat larger by the plaintiff.   This being the only land remaining unsold the plaintiff's agent voluntarily raised his bid to $2,831.66.   He states that his object was to bid enough to make the whole proceeds of the sale equal the amount of the decree with interest and costs, and it would appear that this object was made known to the sheriff.   The land was declared sold at that price, but thereafter finding that he had made a mistake in his calculations, and before leaving the place of sale, plaintiff's agent changed his bid to $2,126.66, which is the amount shown in the return as the purchase price of these tracts.   The investment company's witnesses swear that they did not hear the change announced, but whether they did or not is immaterial.   A mere mistake on the part of the bidder in his own calculations as to the amount which he intended to bid, there being no mistake as to the land sold, the terms of that sale, or other facts of that nature, and the mistake not being induced by any conduct on the part of the vendor, is no ground for a rescission.   While a bid may be changed or withdrawn before its acceptance by the vendor (in this case by the offi-

cer of the court), it cannot, in the absence of circumstances justifying a rescission or reformation of ordinary contracts, be changed or withdrawn after acceptance. The same reasons which permit the withdrawal of a bid before acceptance forbid it after acceptance, at least in a case where the sale is judicial and the officer making the sale is a ministerial officer of the court and has no power to change the terms or contract otherwise than by a public sale of the property. The sale might have been reported at the higher bid, and had it been so done it would be enforced at that figure; but having been returned according to what amounted to a private arrangement between the sheriff and the purchaser after the sale was complete, we see no course except to remand the case to the district court with directions to set aside the sale of the southeast quarter of the northwest quarter and the northeast quarter of the southwest quarter. In other respects the judgment of the district court is affirmed.

JUDGMENT ACCORDINGLY.

RAGAN, C., not sitting.