CALVIN M. BURKETT V. JANE E. CLARK ET AL.

FILED NOVEMBER 19, 1895. No. 5675.

1. **Executions:** DUTIES OF OFFICERS. Sections 491a, 491b, 491c, and 491d, Code of Civil Procedure, examined, and the duties of an officer holding an execution for the sale of real estate found to be as follows: (1) To levy the execution upon said real estate; (2) to call an inquest of two disinterested freeholders of the

Burkett v. Clark.

county where the real estate is situate and administer to them an oath to impartially appraise the interest of the execution defendant in the real estate levied upon; (3) to make application in writing to the county clerk, clerk of the district court, county treasurer, and town, city, or village treasurer, where the real estate is situate, requesting such officers to certify to him the amount and character of all liens existing against the real estate levied upon which are prior to the lien under which the officer desires to sell; (4) with said freeholders to impartially appraise at its real value in money the interest of the execution defendant in the real estate about to be sold; (5) to forthwith deposit a copy of the appraisement made, together with the written application made by him for liens to the county, town, city, and village officers, and the certificates furnished by such officers to him in the office of the clerk of the court from which the execution issued; (6) to immediately thereafter advertise the real estate for sale.

2. ———: ORDER OF SALE. The terms "execution" and "order of sale" are used interchangeably in such statutes, and either is but a written command, under the seal of the court, authorizing and directing the officer to whom it is directed to execute the court's judgment. (*Kelley v. Vincent*, 8 O. St., 415.)

3. ———: LEVY. To levy an execution is to do the acts by which an officer sets apart and appropriates, for the purpose of satisfying the writ, a part or the whole of a defendant's property. (*Lloyd v. Wykoff*, 11 N. J. Law, 218.)

4. ———: ———. What acts must be performed by an officer, in order that they may constitute a levy upon real estate sought to be sold under an execution issued on a judgment at law, not decided.

5. **Order of Sale**: LEVY. Since real estate ordered to be sold by a decree in equity has by such decree already been appropriated and set apart to satisfy the decree, no actual levy thereon need be made by an officer holding an execution by which he is commanded to sell such real estate.

6. ———: DECREE. It is thought such an order of sale should contain, or have attached thereto, a copy of the decree, as the officer in making such sale must strictly follow the terms of the decree. (*Nebraska Loan & Trust Co. v. Hamer*, 40 Neb., 281.)

7. ———: DUTY OF SHERIFF. The word "forthwith," found in section 491d of the Code, means immediately; without delay; directly,—regard being had to the nature of the act required to be performed. (*Moffat v. Dickson*, 3 Colo., 313.)

| 46 | 466 |
| d60 | 212 |
| 60 | 462 |
| 60 | 463 |
| 46 | 466 |
| 62 | 373 |
| 62 | 816 |

8. ———: ———. The copy of the appraisement, together with the written application for liens and the certificates of liens mentioned in said section 491d, must be deposited in the office of the clerk from which the execution issued, before the sale is advertised.

9. ———: ———. The sentence, "It may be deposited any time before sale," found in the third paragraph of the syllabus of *La Flume v. Jones*, 5 Neb., 256, overruled.

10. ———: ———. The object of the statute in requiring an officer to deposit the appraisement made, the application for liens, and the certificates of liens furnished, before advertising the sale, is to afford the execution defendant and plaintiff an opportunity to know at what value the property has been appraised, to examine and ascertain what liens have been certified as existing against the property, and, if a mistake has been made, to afford them time and opportunity to make application to the court to which the execution is returnable for an order vacating the appraisement before the sale occurs.

11. ———: APPRAISEMENT: OBJECTIONS. The sheriff and freeholders in making the appraisement act judicially, and objections that the value put on the property is too high or too low must be made and filed in the case with a motion to vacate the appraisement before the sale. (*Vought v. Foxworthy*, 38 Neb., 790.)

12. ———. Section 490 of the Code is a legislative sanction and adoption of the ancient writ of *venditioni exponas*,—a writ by which an officer is commanded to sell property already levied upon. (Freeman, Executions, sec. 57; *Bellingall v. Duncan*, 3 Gilm. [Ill.], 477.)

13. Judicial Sales. By section 504 of the Code the legislature made the writ of *venditioni exponas* applicable to sales of real estate.

14. Executions. The life of an execution from a court of record is limited by section 510 of the Code to sixty days from its date, and must be returned within that time, whether it be the original or an *alias* writ.

15. ———: APPRAISEMENT: SALE. Section 495 of the Code construed, and *held* to be a limitation on the power of an officer to advertise and offer for sale real estate more than twice under one appraisement.

16. ———: RETURN. An officer holding an execution and having levied the same upon real estate, whether he has offered it for sale or not, and if he has offered it for sale, whether he has sold

it or not, must return the execution within sixty days from its date, stating what he has done under it.

17. ———: APPRAISEMENT.  An officer is required to make but one appraisement of real estate until it has been twice advertised and twice offered for sale, whether under an original or an *alias* writ.

18. ———: ———.  An officer has no authority to cause real estate to be re-appraised until it has been twice advertised and twice offered for sale.

ERROR from the district court of Saline county.  Tried below before HASTINGS, J.

*W. H. Morris,* for plaintiff in error.

*J. H. Grimm, E. W. Metcalfe,* and *M. H. Fleming, contra.*

RAGAN, C.

In the district court of Saline county Jane E. Clark and others brought suit against Calvin M. Burkett to foreclose an ordinary real estate mortgage.  In due time a decree was rendered as prayed, the property sold, and Burkett appeared and resisted the confirmation of the sale, which was, however, confirmed, and he has prosecuted to this court a petition in error to reverse the judgment or decree of confirmation. The order of sale was dated and issued September 1, 1891, and the sheriff caused the property to be appraised twice and twice offered it for sale, once in the month of October and once in the month of November of said year.  The property, however, was not sold on either of those occasions for want of bidders.  The sheriff, then, without returning his order of sale, on the 18th of November advertised the property for sale a third time, and sold it on the 21st of December.  This is the sale in controversy.  On the 23d of November the sheriff caused this property to be re-appraised.  December 10 he filed in the office of the clerk of the district court, from which his execution or order of sale was issued, the re-appraisement made by him of the prop-

erty, and on the 22d of December he filed in the office of the clerk of the district court the certificates of liens existing against the property made by the clerk of the district court, the county treasurer, and the register of deeds of Saline county, and on the same day he returned the order of sale, reciting that he had appraised the real estate and sold it; but the return omitted all mention of the first appraisement of the real estate, its having been twice advertised for sale, twice offered for sale, and not sold for want of bidders. Burkett insisted before the district court that the sale made should not be confirmed and insists here that the judgment of confirmation should be reversed for the following reasons:

1. That the sheriff advertised the premises for sale before re-appraising them and before filing in the office of the clerk of the district court the re-appraisement made of the premises, together with the certificates furnished him by the clerk of the district court, the register of deeds, and the county treasurer, in pursuance of the statute. The question presented involves the construction of sections 491*a*, 491*b*, 491*c*, and 491*d* of the Code of Civil Procedure. These sections, so far as material here, are as follows:

"Sec. 491*a*. Whenever, hereafter, execution shall be levied on any lands and tenements, the officer levying the same shall call an inquest of two disinterested freeholders, who shall be residents of the county where the lands taken on execution are situated, and administer to them an oath impartially to appraise the interest of the person, or persons, or corporation against whom the execution is levied, in the property so levied upon, and such officer, together with said freeholders, shall appraise said interest at its real value in money, and such appraisement shall be signed by such officer and said freeholders, respectively.

"Sec. 491*b*. That for the purpose of the appraisement mentioned in the last preceding section, the officer and the freeholders therein named shall deduct from the real value

of the lands and tenements levied on, the amount of all liens and incumbrances for taxes or otherwise, prior to the lien of the judgment under which execution is levied, and to be determined as hereinafter provided, and which liens and incumbrances shall be specifically enumerated, and the sum thereafter remaining shall be the real value of the interest therein of the person, or persons, or corporation against whom or which the execution is levied.

"Sec. 491c. It shall be the duty of the county clerk, the clerk of the district court, and the county treasurer of the county, and the treasurer of the village, town, or city, wherein such levy is made, for the purpose of ascertaining the amount of the liens and incumbrances upon the lands and tenements so levied upon, on application of the sheriff in writing, holding such execution, to certify to said sheriff, under their respective hands and official seals, the amount and character of all liens existing against the lands and tenements levied on, which are prior to the lien of such levy, as the said liens appear of record in their respective offices.   *   *   *

"Sec. 491d. The officer holding such appraisement shall forthwith deposit a copy thereof, including his application to the officers enumerated in section 3 of this act, and their official certificates as in said section provided, in the office of the clerk of the court from which such execution issued, and shall immediately advertise and sell said real estate, lands, and tenements agreeably to the provisions of this act."   *   *   *

What do these sections require of an officer holding an execution for the sale of real estate?   We first remark that these sections of the statute make no distinction between an ordinary execution issued on a judgment at law and an execution or order of sale based on a decree in equity. The terms "execution" and "order of sale" are used interchangeably.   The duties of an officer as to appraising real estate which is about to be sold are the same, whether he be

selling on execution based on a law judgment or an equity
decree.    Whether the writ which the officer holds be called
an execution or an order of sale, it is but a written com-
mand, under the seal of the court, authorizing and direct-
ing him to execute its judgment (*Kelley v. Vincent,* 8 O. St.,
415); and in cases like the one at bar, where the officer is
commanded to sell real estate to satisfy a decree of fore-
closure of a mortgage against it, it would seem to be the
better practice to embody in, or attach to, the order of sale
a copy of the decree, for the reason that the officer, in mak-
ing such a sale, must do so in strict conformity to the terms
of the decree. (*Nebraska Loan & Trust Co. v. Hamer,* 40
Neb., 281.)

Recurring to the statutes just quoted, we observe that
section 491*a* declares that whenever an execution shall be
levied on any land, the officer levying the same shall, etc.
This would seem to imply that the first duty of an officer
after receiving an execution, commanding him to sell real
estate, would be to levy upon such real estate.    What is a
levy?    To do the acts by which a sheriff sets apart and
appropriates, for the purpose of satisfying the command of
a writ of execution, a part or the whole of a defendant's
property. (Anderson's Law Dictionary; *Lloyd v. Wykoff,*
11 N. J. Law, 218.)    Just what acts must be performed
by an officer in order that such acts may constitute a levy
upon real estate sought to be sold under an execution issued
on a judgment at law is a question not presented by this
record and not decided, and we are not aware of any stat-
ute which defines a levy or declares what an officer hold-
ing an execution must do in order that his acts may con-
stitute a levy upon real estate; but since to levy an execution
is to set apart and appropriate the property of a certain
person for its satisfaction, we are quite clear that an officer
holding an execution or order of sale, in and by which he
is commanded to sell certain real estate therein described
for the satisfaction of such execution, is not obliged, in or-

der to perform the duty of levying upon such real estate, to go upon the same, take possession of any part of said real estate, put up a notice upon said real estate, or make proclamation thereon to the effect that he has levied upon it, since the court by the decree has already by its judgment set apart and appropriated, as it were, the real estate described for the satisfaction of the execution in the officer's hands. The next step such an officer is required to take by said section 491a is that he shall call an inquest of two disinterested freeholders, who shall be residents of the county where the lands taken on execution are situate, and administer to them an oath impartially to appraise the interest of the person against whom the execution is levied. The next duty of such officer is prescribed by section 491c, and requires that he shall make an application in writing to the county clerk, the clerk of the district court, and the county treasurer of the county where the real estate is situate, requesting said officers to certify to him the amount and character of all liens existing against the real estate levied upon, which are prior to the lien under which the officer desires to sell; such liens to be certified as they appear of record in the office of said officers. It is to be noted that this section now requires such an application to be also addressed to the treasurer of the village, town, or city in which such real estate is situate, but this requirement was not in force in 1891, when this case arose. The next duty required of such an officer is found in section 491a, which commands him and said freeholders to impartially appraise, at its real value in money, the interest of the execution defendant in the real estate about to be sold. This appraisement of the execution defendant's interest is to be performed in accordance with said section 491b, which requires the sheriff and two freeholders, acting as appraisers, to deduct from the real value of the real estate levied upon the amount of all liens and incumbrances for taxes or otherwise existing against the real estate and which are

prior liens to the lien on which the officer is about to sell. The officer having levied upon the property, and having appraised the interest of the execution defendant therein, section 491d provides that he "shall forthwith deposit a copy of" the appraisement made, together with the written application made by him to the clerk of the district court, county treasurer, and register of deeds, and the certificates furnished by them to him, in the office of the clerk of the court from which the execution which he holds was issued. After this deposit has been made, the statute (Code, sec. 491d) provides that the officer "shall immediately advertise the real estate." It will thus be seen that the officer holding an execution for the sale of real estate has not authority to advertise the same for sale until he has levied upon it, caused it to be appraised, and deposited in the office of the clerk from which the execution in his hands was issued a copy of the appraisement made by him and the two freeholders, together with the application in writing for liens made by him to the clerk of the district court, the county treasurer, and the register of deeds, and the certificates which such officers furnished him in pursuance of said application.

The word "forthwith," found in section 491d, means immediately; without delay; directly,—regard being had to the nature of the act required to be performed. (*Inman v. West Fire Ins. Co.*, 12 Wend. [N. Y.], 452; *Moffat v. Dickson*, 3 Colo., 313; *Bennett v. Lycoming County Mutual Ins. Co.*, 67 N. Y., 274.) But whatever the technical meaning of "forthwith" in this statute, and whether the facts and circumstances of a particular case would excuse and protect an officer who neglected or delayed the depositing of the appraisement, one thing is beyond all question, viz., that the appraisement must be deposited before the sale is advertised. The statute must be construed as if it read: "The officer holding such appraisement shall forthwith deposit a copy thereof and thereupon shall immedi-

ately advertise," etc.    He shall advertise after he has de-
posited a copy of the appraisement, not before.

In *La Flume v. Jones*, 5 Neb., 256, in the third point
of the syllabus it was said that such an appraisement might
be deposited any time before sale.    In this case LAKE, C.
J., speaking for the court, said: "The next point relied
on is, that the 'sheriff failed to deposit a copy of the ap-
praisement    *    *    *    with the clerk.'    In answer to
this objection it may be said that the record is silent as to
when such copy was in fact deposited.    It shows simply
that a copy of the appraisement was, in fact, deposited.
It will in such case be presumed that the sheriff did his
duty, and made the deposit before the publication of the
notice of the sale."    There is no doubt but that this
is law, but, unfortunately, the learned chief justice con-
tinued as follows: "But even if the sheriff had neg-
lected his duty in this respect, it would not be ground
for setting the sale aside, if it were in fact deposited
before the sale took place," and cited in support of this
last remark *Merritt v. Borden*, 2 Dis. [O.], 503.    In the
case cited section 433 of the Code of Civil Procedure
of the state of Ohio was construed.    That section con-
tained the identical language found in section 491*d* above
quoted, and the court said: "The question submitted to
this court is this: Whether the inquisition taken by the
sheriff was filed with the clerk within the time required
by section 433 of the Code.    It appears the advertisement
for the land was published before the inquisition was filed,
and we have held in general term that no publication can
be legally made until the sheriff has deposited a copy of the
valuation in the clerk's office.    The language of the sec-
tion is: 'The officer receiving such return shall forthwith
deposit a copy thereof with the clerk of the court from
which the writ issued, and immediately advertise and sell
such real estate agreeably to the provisions of this title.'
We shall adhere to the construction we then gave to the

statute, having found no reason since it was announced
why it should be changed or in any particular modified."
The decision in *La Flume v. Jones, supra,* was entirely
correct under the facts of the case, but all that was said by
the chief justice in that case, to the effect that the failure
of the sheriff to deposit the appraisement before advertis-
ing the sale would not be ground for setting it aside, was
*dictum,* and the last sentence in the third point of the syl-
labus, viz., "It may be deposited any time before sale," is
overruled. In the case at bar the officer advertised the
property for sale before he appraised it, did not file the ap-
praisement made until some eleven days before the sale
occurred, and, so far as the record shows, he did not file
a copy of the application made by him for liens existing
against the real estate. The object of this statute in re-
quiring an officer to deposit in the office of the clerk of
the court from which the execution issued, before advertis-
ing the sale, a copy of the appraisement made, a copy of
his application for liens, and the certificates of liens made
by the clerk of the district court, register of deeds, and the
county treasurer, is to afford the execution defendant and
plaintiff an opportunity to know at what value the prop-
erty has been appraised and to examine and ascertain what
liens have been certified as existing against the property,
and, if a mistake has been made, to afford them time and
opportunity to make application to the court to which the
execution is returnable for an order vacating the appraise-
ment before the sale occurs. Generally, this can only be
done before the sale, since the sheriff and the freeholders
in making the appraisement act judicially, and objections
that the value put on the property is too high or too low
must be made and filed in the case with a motion to vacate
the appraisement before the sale occurs. (*Vought v. Fox-
worthy,* 38 Neb., 790.)

2. The second alleged irregularity of the officer relied
on here for reversing the decree of confirmation is the sell-

ing of the property under the execution of September 1.
The contention is that the life of the execution had ex-
pired prior to the date of the sale.   The contention involves
an examination and construction of sections 490, 504, 510,
and 495, Code of Civil Procedure.   These sections of the
statute have all been in force in this state since 1866.   Sec-
tion 490 provides, in substance, that when an officer has
levied an execution on goods and chattels and the same
have not been sold for want of bidders, the officer must re-
turn the writ of execution, and that thereupon the plaintiff
in execution may sue out another writ directing the sale of
the property already levied upon.   Section 504 provides:
"If lands and tenements levied on, as aforesaid, are not
sold upon one execution, other executions may be issued
to sell the land so levied upon."   Section 510 provides:
"The sheriff or other officer, to whom any writ of execu-
tion shall be directed, shall return such writ to the court to
which the same is returnable, within sixty days from the
date thereof."   Said section 490 is but a legislative sanc-
tion and adoption of the ancient writ known as "*vendi-
tioni exponas*."   Mr. Freeman, in his work on Executions,
section 57, thus defines it: "This writ is, therefore, prop-
erly defined as the writ which compels an officer to proceed
with the sale of property levied upon under a *fieri facias*."
(*Bellingall v. Duncan*, 3 Gilm. [Ill.], 477.)   At common
law, real estate could not be sold on execution, but it may
under our statutes be taken for the satisfaction of a judg-
ment at law in the absence of finding personal property
out of which to satisfy the writ; and by said section 504
the legislature has made the writ of *venditioni exponas*
applicable to sales of real estate ; and the legislature, by
said section 510, has limited the life of an execution to
sixty days, whether it be an original or *alias* writ.   In view
of these provisions of the statute it was the duty of the
officer in the case at bar to return the execution issued to
him, of date September 1, to the court to which it was

made returnable within sixty days from said date, unless some other provision of the statute authorized him to retain the execution and proceed under it after it had expired.

It seems to be the contention that the officer was authorized to cause the property in controversy to be re-appraised and offer it for sale under such re-appraisement on the execution of September 1, notwithstanding it had expired, and that authority for this contention is found in section 495. That section is as follows: "In all cases where real estate may hereafter be levied upon, by virtue of any execution or order of sale, and shall have been appraised, and twice advertised and offered for sale, and shall remain unsold for want of bidders, it shall be the duty of the officer to cause a new appraisement of such real estate to be made, and successive executions or orders of sale may issue at any time in vacation, after the return of the officer 'not sold for want of bidders,' at the request of the plaintiff or his attorney." We do not so understand it. The statute is a limitation upon the power of an officer to more than twice advertise and offer for sale real estate under one appraisement. But for this statute an officer would be compelled to make but one appraisement of real estate which he desired to sell under execution. He might go on indefinitely offering and advertising the property for sale and thus incumbering it with unnecessary costs and expenses. We reach the conclusion, therefore, that when the officer in the case at bar had caused the real estate to be appraised and had first offered it for sale in October, and it was not sold for want of bidders, that he then should have returned his writ to the court to which it was made returnable, setting forth what he had done under it, as he could not have again advertised the property for thirty days and offered it for sale within the life of the execution. Having returned his writ, the plaintiff in the execution, in either vacation or term time, might, by virtue of the provisions of said sections 495 and 504, have taken out an-

other writ commanding the officer to again advertise and offer for sale the lands already levied upon and appraised under the former writ.   If the officer had once levied upon the lands and once appraised them and had twice offered them for sale and they were not sold for want of bidders, he should have returned his writ of execution stating what he had done; and if the plaintiff in execution sought to, and did, take out another writ, then it became the duty of the officer, under the third writ, to cause the real estate to be re-appraised and again advertised for sale.   In other words, it amounts to this, that an officer holding a writ of execution, and having levied the same upon real estate, whether he has offered it for sale or not, and if he has offered it for sale, whether he has sold it or not, must return the execution within sixty days from its date, stating what he has done under it; and for a failure to return the writ in such time he is liable to be amerced under the provisions of section 513 of the Code.   But an officer is required to make but one appraisement of real estate until it has been twice advertised and twice offered for sale, whether under the original writ or an *alias*, and he has no authority to cause real estate to be re-appraised until it has been twice advertised and twice offered for sale under the former appraisement.   What is said herein with reference to the return of an execution or order of sale has no application to a case of an officer holding a certified copy of a decree, in and by which decree specific real estate is ordered sold.

The decree of the district court confirming the sale is reversed and the cause remanded with instructions to tax to the complainants in the decree the costs of this proceeding, the costs of the second and third advertisements of the property, and the costs of its second appraisement.

REVERSED AND REMANDED.