CATHERINE REULAND V. SAMUEL WAUGH, EXECUTOR.

FILED OCTOBER 6, 1897. No. 7405.

1. Review: CONFLICTING EVIDENCE. If the evidence is conflicting, a finding or decree thereon will be affirmed unless clearly wrong.

2. Executions: APPRAISEMENT. It is the duty of an officer making a sale of real estate under execution or order of sale to deposit in the office of the clerk of the court from which the writ issued a copy of the appraisement of the property and other papers as required by section 491*d* of the Code of Civil Procedure, and such duty must be performed prior to the advertisement of the sale. (*Burkett v. Clark*, 46 Neb., 466.)

ERROR from the district court of Cass county. Tried below before CHAPMAN, J. *Reversed.*

*Byron Clark* and *C. A. Rawls*, for plaintiff in error.

*A. N. Sullivan, contra.*

HARRISON, J.

This case is presented to this court by proceedings in error to obtain a review of an order of the district court of Cass county confirming a sale of real estate under execution. The sale was made August 27, 1894, and October of the same year, on motion of attorney for defendant in error for confirmation of the sale, it was ordered that cause be shown by November 7th why the sale should not be confirmed.

In the journal entry of the further proceedings appears the following: "And now, on this 8th day of November, this cause came on to be heard upon motion of plaintiff for the confirmation of the sale heretofore made of lots 16, 17, and 19 in section 7, township 12 N. of range 14 E. of 6th P. M., in Cass county, Nebraska, and no exception to said sale being on file in this court, and the proceedings appearing in all respects to be regular, said sale is ordered confirmed and the same is approved. Thereupon comes Byron Clark, attorney for defendant, and at his request is given leave to file exceptions to said sale and affidavits in support thereof, and plaintiff is given a reasonable time in which to file counter-affidavits." The motion filed for plaintiff in error contained the following statement showing its purpose: "Now comes Catherine Reuland, defendant, and moves the court to set aside the confirmation of sale in the above entitled cause for the following reasons, and to vacate said sale." The journal entry of what subsequently transpired leads us to believe that the trial court considered the validity and regularity of the sale as drawn into question under the motion. It reads as follows: "And now, on this twenty-seventh day of November, this

cause came up to be heard upon the exceptions herein filed and the affidavits in support thereof and the counter-affidavits and arguments of counsel, and the court being well and fully advised in the premises, finds in favor of the plaintiff. The court further finds that the said sale was based upon a valid judgment and valid writ, and that the proceedings in all respects have been regular and according to law. The court further finds that the lands included in said sale, or any part thereof, are not the homestead of the defendant. It is therefore ordered, considered, adjudged, and decreed that said sale be and the same is hereby approved, and the sheriff is hereby ordered to execute and deliver to the plaintiff and purchaser herein, John Black, a good and sufficient deed, and is further ordered to place the said John Black in possession of said premises and to remove the said defendant therefrom." We are thus particular in regard to this matter because there was some contention between counsel in the argument with reference to the scope of the motion and hearing, one asserting that it was to set aside the confirmation, and the other that it also involved an attack on the sale. It is true that an order of confirmation had been made, but the trial judge, without a formal order to such effect, so far as the record discloses, seems to have opened the whole matter for examination and adjudication, and by this view we will be governed in our consideration of the points presented.

It was one of the grounds of the motion that the real estate sold was the homestead of the plaintiff in error and not subject to sale under execution. Whether the property was in fact a homestead was the subject of conflicting evidence in form of affidavits and was determined in the negative by the trial judge, and the finding having sufficient of the evidence in its support will not be disturbed.

Another ground of the motion was that "no true certified copy of the appraisement was filed with the clerk of

the court at the time and in the manner provided for by law." And still another, "that said property did not sell for two-thirds of its appraised value."

The property sold was described as follows: "Lots 16, 17, and 19 in section 7, township 12 N. of range 14 E. of 6th P. M., in Cass county, Nebraska." On July 19, 1894, there was filed with the clerk of the district court a copy of the appraisal of the lots, on which was indorsed the following: "I hereby certify that this is a true copy of the original appraisement and all the indorsements thereon. J. C. Eikenbary, Sheriff, by Harvey Holloway, Deputy, Cass county, Neb." In the body of this document there were these statements: "Lot 16, $200.00; lot 17, $600.00; lot 19, $50.00. Gross value of lands and tenements, $850.00. Report of liens waived by John Black." We will state here that on the back of the execution there was written, "(Cert. liens waived by Black.)" There were no deductions of liens, and $850 was given as the appraised value of the real estate. The date of this paper was July 7, 1894. This was the sole evidence of the substance of the appraisal which appeared in the record as it was filed in this court December 13, 1894. On June 2, 1896, there was filed for defendant in error a request to be allowed to supply certain stated matters which it was suggested had been omitted therefrom, one being the original appraisement and what purports to be a report of the county treasurer of taxes against the property sold under the execution, delinquent, and liens thereon. The defendant in error was allowed to file the papers tendered, and in what purported to be a reproduction of the original appraisement were these statements:

"Lot (16)............................$200 00
 Lot (17)............................ 600 00
 Lot (19)............................  50 00
 Gross value of said land and tenements....$850 00
 Taxes as per county treasurer's certificate..  62 30
 Which deducted from the gross value of
    said real estate.......................$787 70
 (Report of liens waived by John Black.)

Which we appraise as the real value in money of the interests of Katherine Reuland in said lands and tenements."

On the margin or bottom of the page was written, "Copy of appraisement filed with clerk." On this paper, so far as disclosed by its copy, the clerk had not placed a filing mark or date. The certificate of the clerk indorsed on the copy states that it is "a true copy of the original appraisement returned in said cause as appeared of record in my office," from which we take it that the original appraisal in this case, as is the practice, was returned with and at the time of the return of the execution after the completion of the sale, and the paper which was placed on file with the clerk before the sale, and which purported to be a copy of the appraisal, was not a copy, in that it contained no reference to any lien for taxes and its deduction from the gross value of the real estate; hence did not convey correct information of the appraisal.

Section 491d of the Code of Civil Procedure is as follows: "The officer holding such appraisement shall forthwith deposit a copy thereof, including his application to the officers enumerated in section three of this act, and their official certificates as in said section provided, in the office of the clerk of the court from which such execution issued, and shall immediately advertise and sell said real estate, lands and tenements agreeably to the provisions of this act, but in no case shall he sell any such real estate, lands or tenements for less than two-thirds the appraised value of the interest of the person, persons or corporation against whom the execution was issued, unless it appear from the appraisement under this act that the liens and incumbrances thereon equal or exceed its real value in money."

In the opinion in the case of *Burkett v. Clark*, 46 Neb., 466, it was stated of this and other sections of the Code on the same subject: "It will thus be seen that the officer holding an execution for the sale of real estate has not authority to advertise the same for sale until he has levied

upon it, caused it to be appraised, and deposited in the
office of the clerk from which the execution in his hands
was issued a copy of the appraisement made by him
and the two freeholders, together with the application
in writing for liens made by him to the clerk of the dis-
trict court, the county treasurer, and the register of deeds,
and the certificates which such officers furnished him in
pursuance of said application.  *  *  *  The object of
this statute in requiring an officer to deposit in the office
of the clerk of the court from which the execution issued,
before advertising the sale, a copy of the appraisement
made, a copy of his application for liens, and the certifi-
cates of liens made by the clerk of the district court,
register of deeds, and the county treasurer, is to afford
the execution defendant and plaintiff an opportunity to
know at what value the property has been appraised and
to examine and ascertain what liens have been certified
as existing against the property, and, if a mistake has
been made, to afford them time and opportunity to make
application to the court to which the execution is return-
able for an order vacating the appraisement before the
sale occurs.    Generally this can only be done before the
sale, since the sheriff and the freeholders in making the
appraisement act judicially, and objections that the value
put on the property is too high or too low must be made
and filed in the case with a motion to vacate the appraise-
ment before the sale occurs.    (*Vought v. Foxworthy*, 38
Neb., 790.)"

As there was no copy of the appraisal on file with the
clerk prior to the time the sale was advertised or made,
it was ineffective.    If it could be claimed that the docu-
ment filed with the clerk was a true copy of the appraise-
ment, then the property did not sell for two-thirds of the
appraised value, for separately neither of the lots sold
for two-thirds of the amount for which it was appraised
in the copy of appraisal filed with the clerk prior to the
sale, nor combining the bids did they amount to two-
thirds of the aggregate of the sums of appraisal.

There were some other matters in regard to the report of the county treasurer, when it came into the record, its date which appeared to be the same as the date of the sale, the absence from the record of any application to the treasurer or certificate of liens, and other points to which we deem it unnecessary to make any extended reference. Their discussion at this time would not materially assist in a disposition of the case, and furthermore they have in the main, if not wholly, been brought into the case since it was removed to this court. The order of confirmation must be vacated and held for naught, and the cause remanded for further proceedings.

REVERSED AND REMANDED.